IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CV-482-FL

| | | |
|---|---|---|
| BARBARA SUMMEY MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| AMERICAN BROADCASTING COMPANIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (DE 9), and motion for sanctions pursuant to Rule 11 (DE 23). Also before the court are plaintiff's motion for oral argument (DE 21) and motion for joinder of claims, which the court construes herein as a motion for leave to amend (DE 22). The issues raised by these motions are ripe for ruling. For the following reasons, the court grants the motion to dismiss, denies the motion for sanctions, and denies plaintiff's motions.

## STATEMENT OF THE CASE

Plaintiff, who is an alleged former participant in an "Extreme Makeover: Home Edition" television program aired in 2011 on defendant's network, commenced this action, pro se, seeking relief for alleged injuries arising out participation by plaintiff and her family in the program. In complaint filed October 10, 2018, plaintiff asserts claims for "breach of contract of good faith and fair dealing," intentional infliction of emotional distress, negligence, and negligent entrustment. (Compl. p. 20). Plaintiff seeks damages for "loss of enjoyment of life/conscious pain and suffering," "pecuniary losses," other compensatory damages, and punitive damages, as well as equitable,

injunctive, and declaratory relief. (Compl. pp. 26-27). Plaintiff attaches to the complaint the following documents:

1) Advertisement for a "Women Veterans' Forum" (DE 1-1).

2) Photograph of a house with a sign in front stating "Steps & Stages" (DE 1-2).

3) Honorable discharge certificate for plaintiff (DE 1-3).

4) Photograph of a gravestone for "James C. Neely Jr." (DE 1-4).

5) Copy of a Federal Express envelope from "Extreme Makeovers - Home Ed." to plaintiff followed by an unexecuted "2009 Family Application," "APPLICATION RELEASE AGREEMENT," and "LOCK AND KEY PRODUCTIONS" "LOCATION AGREEMENT" (DE 1-5).

Defendant filed the instant motion to dismiss on November 5, 2018, seeking dismissal with prejudice of all claims for failure to state a claim upon which relief can be granted, relying upon the following documents:

1) Transcript of a June 19, 2018, motion hearing in the matter captioned Marshal v. The Walt Disney Company, No. 1:17-CV-726 (M.D.N.C.).

2) Plaintiff's complaint in the matter captioned Marshal v. The Walt Disney Company, No. 1:17-CV-726 (M.D.N.C.).

Plaintiff filed response in opposition to the motion to dismiss on January 2, 2019, relying upon the following documents:

1) Plaintiff's motion for protective order and request for hearing in the matter captioned Marshall et al. v. American Broadcasting Companies Inc. et al., No. 1:16-CV-550 (M.D.N.C.).

2) A settlement agreement between the State of North Carolina and Steps & Stages: Disabled Veterans Resource Agency, Inc. ("Steps & Stages"), dated October 16, 2015.

3) A complaint in the matter captioned Williams v. American Broadcasting Companies, Inc., dated September 21, 2005, filed in the Superior Court of California, County of Los Angeles (no case number specified).

Defendant replied in support of its motion to dismiss on January 16, 2019, relying upon a "Lock and Key Productions Company Summary" published by "D&B Hoovers." (DE 20-1).

On January 24, 2019, after the instant motion to dismiss was submitted to the undersigned for decision, plaintiff filed a document titled "Response in Opposition to the Motion to Dismiss and Request for Oral Argument," which the court has designated as including a motion for oral argument. In support thereof, plaintiff relies upon two news articles.

Plaintiff filed on February 26, 2019, the instant motion for joinder of claims, relying upon the following documents, in addition to documents already attached to the complaint:

1) Plaintiff's complaint in the matter captioned Marshal et al. v. State of North Carolina et al., No. 18-CV-12684 (Wake Co. Sup. Ct.) (hereinafter, the "Wake County Superior Court matter").

2) An unpublished memorandum opinion by the United States Court of Appeals for the Ninth Circuit in the matter captioned Celador Int'l, Inc. v. American Broadcasting Companies, Inc., No. 11-55104 (9th Cir. Dec. 3, 2012).

3) Photocopy of a Department of the Army Achievement Medal for Maya V. Marshall.

4) An order in the matter captioned State of North Carolina et al. v. Barbara Marshall, individually and in her capacity as President of Steps & Stages: Disabled Veterans

Resource Agency, Inc. et al., No. 13-CVS-6131 (Wake Co. Sup. Ct. Feb. 18, 2014).

In March 2019, defendant filed response in opposition to plaintiff's motion for joinder, and defendant filed the instant motion for sanctions, relying upon the following documents not already included with filings above:

1) Plaintiff's complaint in the matter captioned Marshall et al. v. American Broadcasting Companies Inc. et al., No. 1:16-CV-550 (M.D.N.C.).

2) An application to proceed in district court without prepaying fees or costs by Maya V. Marshall, including proposed complaint against The Walt Disney Company, in the a matter captioned No. 17-CV-800 (M.D.N.C.).

3) A complaint in the matter captioned Clifton Roberto C.T. Marshall III v. "Extreme Home Makeover" Reality Television Show Broadcaster, Producer, Owner the Walt Disney Company, No. 17-CV-873 (M.D.N.C.).

4) News articles.

5) A February 1, 2018, letter from defendant's counsel to plaintiff notifying plaintiff that its client in the instant matter, and its clients in the Wake County Superior Court matter, will file a motion for sanctions pursuant to Rule 11 if plaintiff does not dismiss her claims with prejudice within 21 days.

**STATEMENT OF ALLEGED FACTS**

The facts alleged in the complaint may be summarized as follows.[1] Plaintiff is a disabled woman veteran, and resident of Fayetteville, North Carolina, who served as a chaplain in the Navy until honorably discharged in March 2011. Plaintiff served for a time in the capacity as "executive

---

[1] For purposes of the instant motion to dismiss, the court considers documents attached to the complaint, but does not consider documents in the record that are not integral to and explicitly relied upon in the complaint.

director" of a non-profit corporation, Steps & Stages, which held itself out to be a "disabled veterans resource agency." (Compl. Ex. A (DE 1-1)). Plaintiff also was "using mostly personal funds" for a time for "housing and helping women veterans with little to no reimbursement from the Department of Veterans Affairs." (Compl. ¶ 31). According to the complaint:

> 12. Defendant American Broadcasting Companies Inc. Extreme Makeover reality television show approaches individuals and families and proposes to transform their homes for a particular purpose such as comfort, convenience and service. American Broadcasting Companies approached Plaintiff Barbara Summey Marshall and family on or around January 2011 and discussed the possibility of rebuilding the Department of Veteran Affairs Foreclosure she had purchased. Plaintiff had purchased the house to offer transitional housing and spiritual support for homeless women veterans many of whom have battled with chronic homelessness, drug addiction, health conditions, domestic violence, mental health issues and unfortunately have also endured (MST) Military Sexual Trauma during their service in the armed forces.

(Id. ¶ 12). The house referenced in the foregoing paragraph also is referenced in the complaint as the "Jubilee House" and the "Langdon Address," at 120 Langdon Street, Fayetteville, North Carolina (the "property"). (Id. ¶¶ 14, 26). A photograph of a portion of the property with a sign for "Steps & Stages" is attached to the complaint. (Compl. Ex. B. (DE 1-2)).

Plaintiff submitted an application "as a prospective candidate for a house makeover," and a copy of an unexecuted "2009 Family Application" for "Extreme Makeover Home Edition" is attached to the complaint. (Compl. ¶ 27; Compl. Ex. E (DE 1-5)). The "2009 Family Application"

5

form states, inter alia, that "anything you send to us will not be returned and becomes the property of Lock & Key Productions." (Compl. Ex. E (DE 1-5) at 3) (emphasis in original).[2] An "APPLICATION RELEASE AGREEMENT" included with the "2009 Family Application" designates "Extreme Makeover: Home Edition" as the "Program" (hereinafter, the "program"); "Lock and Key Productions" as the "Producer" (hereinafter, the "producer" or "producers"); and defendant "American Broadcasting Companies, Inc." as the "Network." (Id. at 14). The "APPLICATION RELEASE AGREEMENT" states, inter alia, that "even if I am selected as a participant, Network and Producer have no obligation to broadcast or exploit the Program," and "all decisions by Network and Producer . . . relating to the Program are final." (Id.).

The "APPLICATION RELEASE AGREEMENT" also includes a general release of the Producer and Network of all claims arising out of "participation . . . in connection with the Program," as well as "the use by Producer of my residential property and home and contents thereof, in connection with the Program." (Id. at 15). A "LOCATION AGREEMENT" also included with the "2009 Family Application" grants to "LOCK AND KEY PRODUCTIONS" and its agents "permission to enter upon and use the property" to be specified in the agreement. (Id. at 18). The "LOCATION AGREEMENT" includes a reference to an additional agreement to come if a property owner is chosen to participate in the program. In particular, Owner –

> acknowledges that if Owner is chosen to participate, (i) Owner will be required to sign a new agreement ("New Agreement") pursuant to which Company shall be granted additional rights to enter onto the premises, record scenes for the Program, and engage in home renovations to be described more fully in such New Agreement; and (ii) such New Agreement will require Owner to release and waive all rights to sue Company and other released parties in connection with any and all claims of any nature relating to the Program and Owner's participation therein, including without limitation claims arising from any renovations performed to the premises.

---

[2] Unless otherwise specified, all page numbers in citations to documents in the record correspond to page number designated by the court's electronic case filing (ECF) system and not the page number, if any, showing on the face of the underlying document.

(Id. p. 19).

At some point around early 2011, plaintiff and her family were selected to be participants in the program. (See Compl. ¶¶ 14-15). Producers came to the property and began preparations for the program. (See id.). "Preparation for the Extreme Makeover show was arduous and taxing on the health of Plaintiff and [her] family." (Id. ¶ 14). Plaintiff's husband, who was also a veteran, died in March 2011, allegedly "from a massive stroke likely caused by stress and complications from agent orange." (Id. ¶ 4). According to the complaint, plaintiff's husband died "following the strenuous interviewing" involved in producing the program. (Id. ¶ 37). Plaintiff indicated to defendant through program producers "that the project needed to be halted so that the family could grieve their loss." (Id. ¶ 15). Defendant urged plaintiff to remain with the program, and program production continued unabated. (See id.).

Production of the program involved a "rebuild of" the house located at the property. (Id. ¶ 31). The "rebuilt house" comprised approximately 5000 square feet of space. (See ¶¶ 31, 49). Defendant "spoke of working with the Department of Veterans Affairs and installing a sprinkler system in the rebuilt Jubilee House so that Plaintiff could potentially apply for grant funding to house and help homeless women veterans." (Compl. ¶ 49). Defendant, however, "decided that [it] would not install the sprinkler system and therefore [plaintiff] did not qualify for consideration for VA funding." (Id.). Upon completion of the production of the program, the property was featured in a "Veteran's Day Special aired on 11-11-11," (hereinafter, the "episode"), which episode "raised over 1 million dollars for US Veterans and their families." (Id. ¶ 29).

Following the airing of the episode, plaintiff experienced a number of challenges and difficulties in the community, as described in the complaint. In particular, the complaint describes a "Fort Bragg/ Fayeteville based conspiracy to take control of the" property. (Id. ¶ 27). The

7

complaint states that "missles of hatred starting coming our way in February 2012," and plaintiff references "newspaper articles from . . . Fayetteville Observer," which "cast doubt and negativity on Plaintiff as a woman veteran," including "criticism from some of the homeless women veterans in our houses and in our program." (Id. ¶ 28). According to the complaint, "[e]nvy and [j]ealousy from the other homeless providers was evident." (Id. ¶ 31). "The Fayetteville Observer would print [an] article and then the State of North Carolina would launch a deeper investigation." (Id. ¶ 32). Someone had "demand[ed] that the State of North Carolina find a reason to prosecute plaintiff and get the [property] away from her." (Id.).

According to the complaint, "[p]laintiff became a moving target for City Government, Local entities, Individuals and law enforcement who did not hold that women veterans were deserving of a house of that magnitude." (Compl. ¶ 54). "From February 2012 to December 2013, Plaintiff and family endured over reaching investigations, hatred, hostility, harassment, incarceration, cyberbullying, electronic messages telling [them] to get out of town, death threats, anonymous phone calls describing the harm that would come [their] way if [they] did not give up the [property] . . . and leave town." (Id. ¶ 34). In 2016, "someone used a baton (or similar object) to kick in [the] garage door at [plaintiff's] family home." (Id. ¶ 35). Plaintiff requested "security services and protection from [defendant]," but defendant "refused [plaintiff's] request." (Id.). Since the episode aired, plaintiff has "contributed more than $200,000 toward the upkeep and maintenance" of the property "for homeless women veterans and towards support of families moving in and out of the home" on the property. (Id. at 49).

## COURT'S DISCUSSION

A. Motion to Dismiss

　　1.　　Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

　　2.　　Analysis

　　　　a.　　Breach of Contract / Implied Duty

Plaintiff asserts a claim for "breach of contract of good faith [and] fair dealing" on the basis of an alleged contract with defendant "to begin the Extreme HomeMakeover process." (Compl. ¶ 37). Plaintiff asserts that defendant agreed to an implied covenant of good faith and fair dealing governing defendant's obligation in response to plaintiff's submission of the "Family Application." (Compl. ¶ 30 (p.21);[3] see Compl. Ex. E (DE 1-5). Plaintiff suggests a breach of contract and the implied covenant due to failure to install a sprinkler system and failure to protect plaintiff and her family from negative and damaging consequences of the episode. (See Compl. ¶¶ 30-35 (pp. 21-23)).

---

[3] Paragraph numbering in the complaint includes two sets of paragraphs numbered 30-37. Citations to the second set of numbered paragraphs in this range specify the corresponding page number.

A claim for breach of contract requires a plaintiff to allege "the existence of a contract between plaintiff and defendant, the specific provisions breached, [t]he facts constituting the breach, and the amount of damages resulting to plaintiff from such breach." Cantrell v. Woodhill Enterprises, Inc., 273 N.C. 490, 497 (1968). To constitute a valid contract, "it is necessary that the minds of the parties meet upon a definite proposition." Horton v. Humble Oil & Refining Co., 255 N.C. 675, 679 (1961). "There is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense." Id.; see Boyce v. McMahan, 285 N.C. 730, 734 (1974).

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228 (1985). "It is a basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement." Weyerhaeuser Co. v. Godwin Bldg. Supply Co., 40 N.C. App. 743, 746 (1979). However, the implied covenant cannot be used to contradict the express terms of a contract or to create a contract when none exists. See id.; Vetco Concrete Co. v. Troy Lumber Co., 256 N.C. 709, 713 (1962) ("[A]n express contract precludes an implied contract with reference to the same matter.").

Plaintiff's claim of breach of contract suffers from numerous deficiencies that demonstrate the claim is fatally flawed as a matter of law. First, plaintiff does not allege any contract between her and defendant. The failure to allege any binding contract with defendant necessarily forecloses her claim of breach of contract or breach of implied covenant of good faith and fair dealing. See Bicycle Transit Auth., 314 N.C. at 228.

Second, plaintiff suggests that defendant nonetheless is bound by an agreement between plaintiff and producers of the program, such as the entity "Lock and Key Productions" referenced

in the "2009 Family Application." (Compl. Ex. E (DE 1-5) at 14). Plaintiff, however, does not allege any facts upon which to infer that defendant and "Lock and Key Productions" should be treated as one and the same corporate entity. "[P]roceeding beyond the corporate form is a strong step: Like lightning, it is rare and severe." State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 439 (2008) (quotations omitted).

Third, even if applicable to defendant, the agreement referenced by plaintiff in the complaint does not impose upon defendant obligations in the nature asserted by plaintiff. For example, the "APPLICATION RELEASE AGREEMENT" states, inter alia, that "even if I am selected as a participant, Network and Producer have no obligation to broadcast or exploit the Program," and "all decisions by Network and Producer . . . relating to the Program are final." (Compl. Ex. E (DE 1-5) at 14). The "LOCATION AGREEMENT" includes a reference to additional terms for participation and releases of liability. (Id. at 19). None of the terms in the "2009 Family Application" require defendant to provide a sprinkler system, or to provide post-production support and security protection for plaintiff or her family.

Fourth, the obligations asserted in the complaint are too indefinite to be enforceable. For example, plaintiff alleges that defendant "spoke of working with the Department of Veterans Affairs and installing a sprinkler system in the rebuilt Jubilee House so that Plaintiff could potentially apply for grant funding to house and help homeless women veterans." (Compl. ¶ 49) (emphasis added). Defendant, however, "decided that [it] would not install the sprinkler system and therefore [plaintiff] did not qualify for consideration for VA funding." (Id.) (emphasis added). Plaintiff alleges no meeting of minds "upon a definite proposition." Horton, 255 N.C. at 679. Likewise, where plaintiff suggests an obligation to provide for post-production support and security protection, plaintiff alleges no agreement on terms thereof.

11

In sum, plaintiff's claim for breach of contract and breach of implied covenant of good faith and fair dealing against defendant fails as a matter of law and must be dismissed for failure to state a claim upon which relief can be granted.

  b.  Intentional Infliction of Emotional Distress

Plaintiff asserts that defendant is liable for intentional infliction of emotional distress by insisting on going forward with preparation for the program after plaintiff's husband died, and by refusing to provide post-production security services to plaintiff.

To plead intentional infliction of emotional distress, plaintiff must allege "(1) extreme and outrageous conduct [by the defendant], (2) which is intended to cause and does cause (3) severe emotional distress to another." Turner v. Thomas, 369 N.C. 419, 427 (2016). Conduct is "extreme and outrageous" if it "exceeds all bounds of decency tolerated by society" and is "regarded as atrocious, and utterly intolerable in a civilized community." Id. (quotations omitted). "In this context, the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304 (1990).

Plaintiff's claim fails for three reasons. First plaintiff has not alleged extreme and outrageous conduct by defendant. Continuing production of the program after the death of plaintiff's husband, and not providing post-production security services, do not meet the "high threshold" of extreme and outrageous activities. Turner, 369 at 427. Second, plaintiff has not alleged severe emotional distress. Her assertion that she suffered "mental anguish, nervous anxiety and severe and extreme emotional and physical distress," (compl. ¶ 38), and "injuri[es] to [her] emotions and to [her]

nervous system," (id. ¶ 44), conclusorily recites the language of the element of the claim and does not provide facts upon which the element can be pleaded properly. Third, plaintiff has not alleged the defendant intended to cause or did cause plaintiff severe emotional distress. Plaintiff has alleged, at most, that others in Fayeteville and North Carolina intended to cause plaintiff and her family distress. (See, e.g., Compl. ¶¶ 31-32, 34-35).

In sum, plaintiff's claim of intentional infliction of emotional distress suffers from numerous deficiencies that demonstrate the claim is fatally flawed as a matter of law. Accordingly, this claim must be dismissed for failure to state a claim upon which relief can be granted.

    c.    Negligence

Plaintiff asserts that defendant was negligent by insisting on going forward with preparation for the program after plaintiff's husband died, and by refusing to provide post-production security services to plaintiff.

To state a claim for negligence, plaintiff must allege facts establishing that defendant "failed to exercise proper care in the performance of some legal duty owed [to plaintiff] and that the breach of this duty was the proximate cause of [plaintiff's] injury." Goodman v. Wenco Foods, Inc., 333 N.C. 1, 18 (1992).

Plaintiff's negligence claim fails because she has not alleged any legal duty owed by defendant to plaintiff. Plaintiff suggests that some duty may have arisen through an unspecified production agreement or other contractual relationship between plaintiff and defendant or related entities or agents. As an initial matter, to the extent a contractual relationship is asserted to govern, the law does not recognize a tort action arising from that relationship. Where a cause of action presumes the "existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement," the issues raised must be relegated to the arena of contract law, and are not

13

appropriate for resolution under tort principles. Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998). "It is the law of contract, not tort law, which defines the obligations and remedies of the parties in such a situation." Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018).

In any event, none of the production agreements described in the complaint or attached thereto imposes legal duties on defendant of the nature asserted by plaintiff in her negligence claim. Indeed, the "2009 Family Application" expressly releases the producers of the program from "any and all claims" and damages arising out of production of the program. (Compl. Ex. E (DE 1-5) at 15).

In sum, plaintiff's claim of negligence suffers from numerous deficiencies that demonstrate the claim is fatally flawed as a matter of law. Accordingly, this claim must be dismissed for failure to state a claim upon which relief can be granted.

    d.  Negligent Entrustment

Plaintiff asserts a claim of negligent entrustment premised upon defendant's "[n]egligent [e]ntrustment of the property turned over to [defendant] to rebuild" where "[d]efendant did not take the necessary precautions to shield [plaintiff] from . . . hostility, hate crimes, violence, property damage, incarceration, defamation or death threats," after plaintiff requested help from defendant. (Compl. ¶ 53).

"Negligent entrustment is established when the owner of an automobile entrusts its operation to a person whom he knows, or by the exercise of due care should have known, to be an incompetent or reckless driver, who is likely to cause injury to others in its use," where "[b]ased on his own negligence, the owner is liable for any resulting injury or damage proximately caused by the borrower's negligence." Tart v. Martin, 353 N.C. 252, 254 (2000). Where negligent entrustment

is premised upon negligence, and where plaintiff fails to state a claim for negligence, plaintiff's negligent entrustment claim likewise fails as a matter of law. Moreover, plaintiff cannot herself assert a claim of negligent entrustment against defendant where she is the alleged owner of the property that allegedly was entrusted. (See, e.g., Compl. ¶¶ 4, 49).

Accordingly, plaintiff's claim of negligent entrustment is fatally flawed as a matter of law. Accordingly, this claim must be dismissed for failure to state a claim upon which relief can be granted.

   e.  Damages

Plaintiff asserts a "cause of action" for "loss of enjoyment of life / conscious pain and suffering" and "pecuniary losses." (Compl. pp. 26-28). Damages standing alone are not causes of action. Thus, as asserted, they must be dismissed. Moreover, where plaintiff's claims must be dismissed for failure to state a claim, plaintiff's assertions of damages also must be dismissed.

B.  Motion for Joinder

In her motion for joinder, plaintiff requests to have the Wake County Superior Court matter joined with the instant action (Mot. for Joinder (DE 22) at 15), and she requests that claims in the Wake County Superior Court matter be considered in the instant action (see id. at 1-2). In the Wake County Superior Court matter, plaintiff and two family members assert claims against defendants including the State of North Carolina, City of Fayetteville mayor and city officials, an attorney Allen Rogers, the Fayetteville Observer, and other individuals. Claims include North Carolina torts including civil conspiracy, legal malpractice, defamation, fraudulent business practices, and malicious prosecution. Additional defendants referenced in the complaint in the Wake County Superior Court matter include American Broadcasting Companies, Inc., defendant in the instant case. (Wake County Superior Court complaint (DE 22-1) ¶ 39).

The court construes plaintiff's motion for joinder as a motion for leave to amend the instant complaint to add claims and defendants asserted in the Wake County Superior Court matter. "[L]eave sought should, as the rules require, be freely given," except, as pertinent here, in instances of "futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

In that part where the Wake County Superior Court complaint suggests defendant was negligent and intentionally inflicted emotional distress by refusing to help plaintiff when she encountered post-production challenges with community members and others in North Carolina, (see Wake County Superior Court complaint (DE 22-1) ¶ 39), such claims are deficient in the same respect as the claims in the instant case. In remaining part where the Wake County Superior Court complaint asserts North Carolina common law claims against North Carolina residents, entities, and agencies, the court lacks jurisdiction to adjudicate them given a lack of diversity jurisdiction and federal question jurisdiction. See 28 U.S.C. §§ 1331-1332. Accordingly, plaintiff's motion for joinder, construed as a motion to amend, is denied as futile.

C.  Motion for Sanctions

Defendant moves for sanctions pursuant to Rule 11 on the basis that it, and its parent company, The Walt Disney Company, Inc., "have been forced to defend themselves against six iterations of the instant lawsuit" asserting "fundamentally flawed claims," four of which "have been dismissed for a variety of deficiencies, and [plaintiff] has been cautioned by a federal judge against re-filing her claims." (Mem. (DE 24) at 1).

Rule 11 provides, in pertinent part, that when filing pleadings or motions with the court, an unrepresented party certifies that, to the best of that party's knowledge, the filing satisfies certain

16

requirements, including that the filing is not made for an improper purpose "such as to harass," that the claims are warranted by existing law, and that factual contentions have evidentiary support. See Fed. R. Civ. P. 11(b). A party may move for sanctions when another party's conduct does not conform with Rule 11, and the court may impose a sanction "limited to what suffices to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4).

"A prefiling investigation of the law will not pass muster under Rule 11 where the complaint has absolutely no chance of success under the existing precedent." Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991) (quotations omitted). However, "creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." Id. (quotations omitted). Moreover, "allegations of [a] pro se complaint," are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).

Defendant has not demonstrated a basis for Rule 11 sanctions under this standard at this time. Nevertheless, the court recognizes the repetitive nature of the lawsuits plaintiff and her family members have filed arising out of the same facts and circumstances, including after having been warned of the deficiencies in the merits of the claims asserted. (See Tr. (DE 23-1) at 32). Moreover, plaintiff's proposed amendment to her claims in the form of the motion for joinder is not responsive to the deficiencies highlighted by defendant's motion to dismiss. While this litigation conduct does not rise to the level of Rule 11 sanctions at this time, the court does take it into account in exercising its discretion below to dismiss this action with prejudice.

In the event future filings in this court may be characterized as repetitive, harassing, or made in disregard of the court's orders, this court may have cause to consider again application of Rule 11 sanctions, or prefiling injunction, as appropriate. At present, the standard for sanctions has not been met. Therefore, defendant's motion for sanctions is denied.

D.   Dismissal with Prejudice

"[T]he nature of dismissal is a matter for the discretion of the district court." Adbul-Mumit v. Alexandria Hyundai, LLC, 896 F.3d 278, 292 (4th Cir. 2018); see Carter v. Norfolk Cmty. Hosp. Ass'n, Inc., 761 F.2d 970, 974 (4th Cir. 1985) ("[D]ismissal under Rule 12(b)(6) is . . . with prejudice unless [the court] specifically orders dismissal without prejudice. That determination is within the district court's discretion."). In exercising this discretion, the court is not required to "resolve pleading deficiencies, regardless of previous opportunities to amend or other extenuating circumstances." Adbul-Mumit, 896 F.3d at 292. In this case, in light of the substantial deficiencies in plaintiff's claims, multiple prior attempts at litigating based upon the same facts and circumstances, as well as plaintiff's futile attempt after the close of motion to dismiss briefing to further amend the complaint, the court in its discretion dismisses this action in its entirety with prejudice.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 9) is GRANTED, and this action in its entirety is DISMISSED WITH PREJUDICE. Plaintiff's motion for oral argument (DE 21) is DENIED, where the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process. Plaintiff's motion for joinder of claims (DE 22) is DENIED, and defendant's motion for sanctions (DE 23) is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 29th day of April, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge